IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUBEN REYES-ECHEVARRIA, | ) | |
| Petitioner, | ) | Civil Action No. 15-258 Erie |
| | ) | |
| v. | ) | District Judge Barbara Rothstein |
| | ) | Magistrate Judge Susan Paradise Baxter |
| MONICA RECTENWALD, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

Before the Court is a petition for a writ of habeas corpus filed by Ruben Reyes-Echevarria (the "Petitioner"), pursuant to 28 U.S.C. § 2241. [ECF No. 4]. It is respectfully recommended that the petition be dismissed because the Court lacks subject matter jurisdiction.

**II.    REPORT**

**A.    Background**

The Petitioner was tried and convicted in the United States District Court for the District of Puerto Rico (the "trial court") in a criminal case docketed as United States v. Reyes-Echevarria, No. 3:99-cr-00069 (D.P.R.). The United States Court of Appeals for the First Circuit summarized the facts of his case as follows:

> According to trial testimony, [the Petitioner] operated a drug trafficking organization from 1994 through 1997. [The Petitioner] had an agreement with José Alberto Martínez-Torres ("Martínez") to sell cocaine and heroin at various drug points in Southern Puerto Rico, including Santa Isabel, Coamo, El Pastillo, and Salinas. One of [the Petitioner's] employees, Carlos Rubert-Collazo ("Rubert"), controlled the organization's daily operations.
>
> The government presented testimony that [the Petitioner] was motivated to murder Martínez in the summer of 1996 out of fear that Martínez might murder him or that Martínez's nephews might take over [the Petitioner's] drug points if Martínez – who

1

was infected with the HIV virus – suddenly died. [The Petitioner] and Rubert met with Daniel Sánchez-Ortiz (a/k/a "Danny El Gordo") ("Sánchez") and José Medina-Cruz (a/k/a "José El Mellao") ("Medina") approximately three times to plan Martínez's murder. In exchange for killing Martínez, [the Petitioner] and Rubert agreed to give Medina two-eighths kilogram of heroin and to pay the four individuals a total of $20,000.

On June 11, 1996, Sánchez and Medina, along with two recruits Roberto "Blackie" Báez-Segarra ("Báez") and José "Hershey" Rivera-Segarra ("Rivera"), drove to Martínez's Santa Isabel home. Medina and Rivera changed into black uniforms resembling the Puerto Rico Police Department's Saturation Unit uniform and entered Martínez's house through a door in the garage, claiming they were police officers. After entering, Medina and Rivera fired handguns at Martínez 23 times, striking him twelve times. Martínez died in a hospital at approximately 1:30 a.m. on June 12, 1996.

On the afternoon of Martínez's death, Rubert contacted Sánchez on [the Petitioner's] behalf; he requested a meeting between [the Petitioner], Rubert, Sánchez, and Medina. At the meeting, [the Petitioner] gave Medina the promised heroin and gave $10,000 cash to Medina and Sánchez. [The Petitioner] promised to give them the $10,000 balance later.

After Martínez's death, [the Petitioner] assumed control of Martínez's heroin drug points, and in 1997, he gave Martínez's cocaine drug points to Rubert. [The Petitioner] continued to operate the heroin drug points until his 1999 arrest, selling between 1000 and 2000 bags of heroin per week at each drug point.

A federal grand jury returned a two-count indictment against [the Petitioner] and three co-defendants (Rubert, Báez, and Rivera) for the drug conspiracy and the murder of Martínez. The government charged [the Petitioner] only on Count One, the drug conspiracy. After a twelve-day trial, the petit jury found him guilty of conspiring to "knowingly and intentionally possess with the intent to distribute" more than five kilograms and more than one kilogram of heroin in violation of 21 U.S.C. § 841(a)(1). The district court sentenced [the Petitioner] to life in prison and to five years supervised release.

United States v. Reyes-Echevarria, 345 F.3d 1, 3-4 (1st Cir. 2003).

In his direct appeal, the Petitioner alleged that the trial court erred in failing to dismiss the indictment and in admitting as evidence a death certificate without the requested sanitation as to the cause of death. He also raised a claim under Apprendi v. New Jersey, 530 U.S. 466 (2000) and argued that the trial court violated his due process rights when it enhanced his sentence to life without

submitting the enhancement factor to the jury. On September 22, 2003, the First Circuit Court denied the Petitioner's claims on the merits and affirmed his judgment of conviction. Id. at 3-7.

On August 2, 2004, the Petitioner filed in his trial court his first motion to vacate his sentence pursuant to 28 U.S.C. § 2255. See Reyes-Echevarria v. United States, No. 14-1021, 2014 WL 5714703, * 1 (D.P.R. Nov. 5, 2014). He claimed that defense counsel was ineffective. The court dismissed the petition with prejudice finding that the Petitioner failed to meet the burden to show ineffective assistance of counsel. It also denied him a certificate of appealability. Id. He subsequently filed an application for a certificate of appealability in the First Circuit Court, which was denied. He then filed a writ of certiorari in the United States Supreme Court, which also was denied. Id. (citing Reyes-Echevarria v. United States, 559 U.S. 1083 (2010)).

The 1996 amendments that the Antiterrorism and Effective Death Penalty Act ("AEDPA") made to § 2255 bar a federal prisoner from filing a second or successive § 2255 motion unless the appropriate court of appeals first certifies the filing contains a claim based on: (1) "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense;" or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). See also 28 U.S.C. § 2244(a).

The Petitioner has filed with his trial court several second or successive motions to vacate pursuant to § 2255. Reyes-Echevarria, No. 14-1021, 2014 WL 5714703 at * 1-2. Those motions have been denied because he did not first receive the required authorization from the First Circuit Court to file another § 2255 motion.[1] Id. 2-3.

---

[1] In a recent unauthorized successive § 2255 motion, the Petitioner argued that he was entitled to relief under Alleyne v. United States, 133 S.Ct. 2151 (2013). The trial court dismissed the petition because he had not sought or received

The Petitioner is incarcerated at FCI McKean, which is located within the territorial boundaries of the Western District of Pennsylvania. Now pending before this Court is his petition for a writ of habeas corpus, which he filed pursuant to 28 U.S.C. § 2241. As to the § 924(c) conviction, the Petitioner asserts that he is innocent of that count because he was not indicted for the underlying murder. (ECF No. 4 at 8; ECF No. 17 at 5). As to the drug convictions, the Petitioner asserts that "[n]one of the amounts were produced before the jury and nor [sic] was the jury instructed to find these amounts." (ECF No. 4 at 8; ECF No. 17 at 7).

In her Answer [ECF No. 15], the Respondent contends that the petition must be dismissed for lack of subject matter jurisdiction. The Petitioner has filed a reply [ECF Nos. 16, 17], and this case is now ripe for review.

---

authorization from the First Circuit Court to file it. Reyes-Echevarria, No. 14-1021, 2014 WL 5714703 at * 3. It noted, however:

> [I]t is worth mentioning here, particularly in light of his many attempts to overturn his sentence, that Petitioner's reliance on Alleyne is misplaced. In Alleyne, the Supreme Court extended the reach of a principle, first articulated in Apprendi v. New Jersey, 530 U.S. 466 (2000), requiring that any fact that increases a defendant's mandatory minimum sentence must be submitted to a jury to be proved beyond a reasonable doubt. The Supreme Court has given no indication as [sic] that Alleyne applies retroactively to cases on collateral review. However, the Supreme Court previously held, in United States v. Booker, 543 U.S. 220 (2005), that Apprendi was not retroactively applicable. See also Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013) (suggesting, without deciding, that because "Alleyne is an extension of Apprendi ... [t]his implies that the [Supreme] Court will not declare Alleyne to be retroactive.") Moreover, no court has yet treated Alleyne as retroactive to cases on collateral review. See, e.g., United States v. Redd, 735 F.3d 88, 91-92 (2d Cir. 2013) (holding that Alleyne does not apply to cases on collateral review); United States v. Reyes, 755 F.3d 210, 212-13 (3rd Cir. 2014) (same); In re Kemper, 735 F.3d 211, 212 (5th Cir. 2013) (same); Rogers v. United States, 561 Fed.Appx. 440, 442 (6th Cir. 2014) (same); United States v. Hoon, 762 F.3d 1172, 1173 (10th Cir. 2014) (same); United States v. Harris, 741 F.3d 1245 (11th Cir. 2014) (same); Castro-Davis v. United States, 2014 WL 1056528 (D.P.R. March 18, 2014); Lassalle-Velazquez v. United States, 2013 WL4459044 (D.P.R. Aug. 16, 2013); United States v. Stanley, 2013 WL 3752126, at *7 (N.D. Okla. July 16, 2013); United States v. Eziolisa, 2013 WL 3812087, at *2 (S.D. Ohio July 22, 2013); Affolter v. United States, 2013 WL 3884176, at *2 (E.D. Mo. July 26, 2013). Since neither the Supreme Court nor the First Circuit has held Alleyne to be retroactively applicable, we decline to do so here.

Id.

B.  **Discussion**

1.  **Section 2255 Provides the Post-Conviction Remedy For Federal Prisoners**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates."[2] Id. "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010). That type of action is brought in the district court that tried and sentenced the prisoner by way of a motion filed under 28 U.S.C. § 2255, which permits a federal prisoner to challenge his conviction or sentence "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"

In contrast, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee, 627 F.3d at 935, such as, for example, the way in which the Bureau of Prisons is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). See also BRIAN R. MEANS, Postconviction Remedies § 5:7, WestlawNext (database updated July 2016). A habeas corpus action pursuant to § 2241 must be brought in the custodial court – the federal district court in the district the prisoner is incarcerated – not the district court where the prisoner was tried and sentenced.

---

[2]  Although a motion under section 2255 is not technically a petition for a writ of habeas corpus, it is habeas corpus' practical substitute for federal prisoners. See, e.g., Davis v. United States, 417 U.S. 333, 343 (1974); Kaufman v. United States, 394 U.S. 217, 221-22 (1969).

Importantly, § 2255 expressly prohibits a federal court from entertaining a § 2241 habeas corpus petition filed by a federal prisoner who is raising the types of claims that must be raised in a § 2255 motion unless it "appears that the remedy by [§ 2255 motion] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). This provision of § 2255 is commonly referred to as the "savings clause."

It is only the extraordinarily rare case that falls within § 2255's savings clause. In its landmark case In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit recognized the one circumstance under which it has found § 2255's remedy to be inadequate of ineffective since AEDPA amended § 2255 in 1996 to include a one-year statute of limitations and the prohibition against the filing of second or successive motions. The petitioner in Dorsainvil, Ocsulis Dorsainvil, was convicted, *inter alia*, of using a gun in connection with a drug crime under 18 U.S.C. § 924(c)(1). He was so convicted notwithstanding that he did not "use" the gun but the gun was merely present in the car from which the drugs were to be bought. After he had exhausted his appeals and litigated his first § 2255 motion, the Supreme Court in Bailey v. United States, 516 U.S. 137 (1995) construed the criminal statute under which Dorsainvil was convicted (18 U.S.C. § 924(c)(1)) to exclude from the ambit of the statute mere presence of a gun at a drug crime, thus arguably rendering him actually innocent of the crime of using a gun in connection with a drug offense.

Post Bailey, Dorsainvil applied to the Third Circuit Court for authorization to file in the district court a second or successive § 2255 motion. The court had no choice but to deny his request because he could not satisfy AEDPA's gatekeeping requirements for the filing of a second or successive § 2255 motion.[3] It concluded, however, that under the circumstances, Dorsainvil had established that § 2255

---

3  Although Bailey was a substantive rule that applied retroactively to cases on collateral review, Bousley v. United States, 523 U.S. 614, 620-21 (1998), the Supreme Court's decision in Bailey was one of *statutory construction*, and therefore

was "inadequate or ineffective" to test the legality of his detention and, therefore, he could bring his claim in a § 2241 habeas corpus petition:

> A similar case "involv[ing] the availability of collateral relief from a federal criminal conviction based upon an intervening change in substantive law" came before the Supreme Court in <u>Davis v. United States</u>, 417 U.S. 333, 334 (1974). In that case, the Court stated that a Supreme Court decision interpreting a criminal statute that resulted in the imprisonment of one whose conduct was not prohibited by law "presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." <u>Id.</u> at 346 (internal quotations omitted). The Court held that "*if [petitioner's] contention is well taken, then [his] conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under § 2255*." <u>Id.</u> at 346-47 (internal quotations omitted); <u>see</u> <u>also</u> <u>United States v. Addonizio</u>, 442 U.S. 178, 186-87, (1979) (discussing <u>Davis</u> and observing that a refusal to have vacated his sentence "would surely have been a 'complete miscarriage of justice,' since the conviction and sentence were no longer lawful").
>       The decision in <u>Davis</u> that § 2255 was broad enough to cover a defendant imprisoned for a crime that an intervening decision negates does not govern Dorsainvil's motion before us only because he has brought his claim for relief on a second § 2255 motion [subject to the gatekeeping provisions of AEDPA]. In the earlier part of this opinion, we construed the AEDPA to preclude our certification of a second § 2255 motion that relied on the intervening decision in <u>Bailey</u> as a basis for certification. Thus, Dorsainvil does not have and, because of the circumstance that he was convicted for a violation of § 924(c)(1) before the <u>Bailey</u> decision, never had an opportunity to challenge his conviction as inconsistent with the Supreme Court's interpretation of § 924(c)(1). If, as the Supreme Court stated in <u>Davis</u>, it is a "complete miscarriage of justice" to punish a defendant for an act that the law does not make criminal, thereby warranting resort to the collateral remedy afforded by § 2255, it must follow that it is the same "complete miscarriage of justice" when the AEDPA amendment to § 2255 makes that collateral remedy unavailable. In that unusual circumstance, the remedy afforded by § 2255 is "inadequate or ineffective to test the legality of [Dorsainvil's] detention."
>       There is no reason why § 2241 would not be available under these circumstances, provided of course that Dorsainvil could make the showing necessary to invoke habeas relief, an issue for the district court.

<u>Dorsainvil</u>, 119 F.3d at 250-51 (emphasis added).

---

did not constitute "a new rule of *constitutional law* . . . that was previously unavailable[.]" <u>Dorsainvil</u>, 119 F.3d at 247-48 (quoting 28 U.S.C. § 2255 (now at § 2255(h)) (emphasis added)).

The Third Circuit Court subsequently described the narrow holding of Dorsainvil as follows: "§ 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." Trenkler v. Pugh, 83 F.App'x 468, 470 (3d Cir. 2003).

### 2. This Court Does Not Have Jurisdiction Over the Petitioner's Claims

This Court would have jurisdiction over the Petitioner's claims only if he demonstrated that they fall within § 2255's "savings clause." It is the Petitioner's burden to establish that the remedy under § 2255 is inadequate or ineffective. See, e.g., Charles v. Chandler, 180 F.3d 753, 756 (6th Cir. 1999) (per curiam). He has not met the requisite burden.

The § 2255 remedy is not rendered inadequate or ineffective so as to permit resort to § 2241 merely because, as is the case here, the Petitioner is prevented by § 2255's gate-keeping requirements from litigating a second or successive § 2255 motion. Although the court in Dorsainvil concluded that the circumstance presented in that case was the rare one in which a federal prisoner could challenge the validity of his conviction under § 2241, it expressly stated:

> We do not suggest that § 2255 would be "inadequate or ineffective" so as to enable a second petitioner to invoke § 2241 *merely because that petitioner is unable to meet the stringent gatekeeping requirements of [AEDPA's amendments to] § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255.*

Dorsainvil, 119 F.3d at 251 (emphasis added). See, e.g., Cradle v. United States ex rel. Miner, 290 F.3d 536, 539 (3d Cir. 2002) (per curiam) ("Section 2255 is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is

8

unable to meet the stringent gatekeeping requirements of the amended § 2255."); Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002); Young v. Yost, 363 F.App'x 166, 169 (3d Cir. 2010) (per curiam) ("Section 2255 is not 'inadequate or ineffective' merely because the Fourth Circuit Court of Appeals denied [the petitioner] permission to file a second or successive § 2255 motion raising his present claim."); Gilbert v. United States, 640 F.3d 1293, 1308 (10th Cir. 2011) ("We join all other circuits in refusing to interpret the savings clause in a way that would drop the § 2255(h) bar on second and successive motions, defeat its purpose, and render it pointless."); Upshaw v. Warden Lewisburg USP, 634 F.App'x 357, 359 (3d Cir. 2016) (citing Okereke, 307 F.3d at 121 and rejecting the petitioner's claim that he could pursue relief under Alleyne in a § 2241 motion, noting "[w]e have previously held that prisoners may not resort to § 2241 petitions to raise Apprendi arguments.").

This Court must dismiss the petition for want of subject matter jurisdiction because the Petitioner is challenging the validity of his conviction and he cannot do so in a § 2241 petition. The Petitioner's claims does not meet the Dorsainvil criteria and there is no basis to conclude that his claims falls within § 2255's "savings clause." Therefore, because this case does not present the rare situation rendering § 2255 "inadequate or ineffective," this Court does not have jurisdiction and the petition should be dismissed for that reason.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed for lack of subject matter jurisdiction.[4]

---

[4] 28 U.S.C. § 2253 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000) (en banc), abrogated on other grounds by Gonzalez v. Thaler, 132 S.Ct. 641 (2012). As such, the Court should make no certificate of appealability determination in this matter.

9

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:  November 7, 2016                    /s/ Susan Paradise Baxter
                                                            SUSAN PARADISE BAXTER
                                                            United States Magistrate Judge